1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**DISTRICT OF NEVADA**

7

8  ELAINE L. CHAO, Secretary of Labor,     )
   United States Department of Labor,      )       2:04-CV-0891-RCJ-GWF
                                           )
9                        Plaintiff,        )
                                           )
10              v.                         )              **ORDER**
                                           )
11  PACIFIC STUCCO, INC., and JIM POPE,    )
                                           )
12                       Defendants.       )
   ─────────────────────────────────────  )

13

14          This matter coming before the Court on Defendants' Motion for Partial Summary

15   Judgment (#49).  The Court has considered the Motion, the pleadings on file, and oral

16   argument on behalf of all parties.  IT IS HEREBY ORDERED that Defendants' Motion for

17   Partial Summary Judgment (#49) is *granted in part* and *denied in part*.

18                               **BACKGROUND**

19          Defendants are engaged in the business of housing construction and repair and

20   provide, among other services, lathing and plaster application for the exterior portion of

21   homes.  Defendant Jim Pope ("Pope") has been President and General Manager of Defendant

22   Pacific Stucco, Inc. ("Pacific Stucco") for approximately ten years.  Plaintiff Elaine Chao, the

23   Secretary of Labor ("Plaintiff"), claims that Defendants violated the minimum wage and

24   overtime provisions of the Fair Labor Standards Act ("FLSA") by willfully underpaying their

25

employees and by failing to keep accurate records of employees' work hours. Prior to filing its Complaint (#1), Plaintiff interviewed 59 of the 262 current and former employees of Pacific Stucco regarding their hours worked and pay received. Over Plaintiff's objection, this Court ordered Plaintiff to identify the employee witnesses that Plaintiff intends to call at trial. Accordingly, Plaintiff gave Defendants a list of twelve employees, all of whom were lathing employees.

Pacific Stucco employs several lathing teams for its various construction projects. While only one lathing crew generally works at a particular construction site at a time, Pacific Stucco can have 20 to 30 lathing crews working at different sites at any given time. Each lathing crew is managed by a foreman or crew chief on site and every crew is supervised by one of five superintendents.

Pacific Stucco pays its field workers (including lathers and plasterers) using a piecework method. At the start of each week, each foreman turns in time sheets, which reflect the hours worked by their crew the previous week. When a house is finished, Pacific Stucco gives the foreman a timecard indicating the total amount of money that the crew will receive for its work on the house. The crew chief then divides the proceeds for that house among the employees on his crew. The majority of Pacific Stucco's policies related to hours worked and wages are contained in the company's Field Employee Handbook ("Handbook"). Pacific Stucco claims that the employees are ultimately responsible for ensuring that their hours are accurately recorded according to company policy.

In 1999, the United States Department of Labor investigated Pacific Stucco for violations of federal wage and hour laws, but took no official action against Pacific Stucco.

As part of the National Recidivism Study, the United States Department of Labor initiated another investigation of Pacific Stucco in 2003.  Although there were no facial inaccuracies in Pacific Stucco's time records, none of them showed overtime hours being worked.  After interviewing employees, the Department of Labor discovered that several field employees did in fact work overtime hours during the relevant period.  After the Department of Labor filed its Complaint (#1), Pacific Stucco claims to have conducted its own investigation.  As part of that investigation, Pacific Stucco secured declarations from 16 field employees stating that they were properly paid for all hours worked and were not owed any overtime.

**DISCUSSION**

Defendants move the Court for partial summary judgment based on two principal theories.  First, Defendants argue that the Court must limit the claims against Defendants based on Plaintiff's disclosed representative witnesses.  Second, Defendants claim that the Court should dismiss the claims against Jim Pope because he does not qualify as an employer under the FLSA and did not have actual or constructive knowledge of any wage and hour violations.

## I.    Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when the evidence on record establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ

on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, and presenting evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986).

## II.    Limitation of Claims Based on Representative Witnesses

First, Defendants argue that they are entitled to partial summary judgment because Plaintiff's claims are limited based on the disclosed representative witnesses.  Defendants assert that the representative witnesses only support claims against lathers that worked on the same crews as the representative witnesses.  Defendants also argue that the Court should dismiss all claims concerning the 16 employees who provided declarations in which they stated that they were properly paid and Pacific Stucco did not owe them any overtime salary.

### A.    Limitation of Claims to Lathers Only

Defendants argue that Plaintiff cannot support claims against Pacific Stucco on behalf of field employees other than lathers.  Pursuant to this Court's Order (#44), Plaintiff disclosed a list of employees that the Secretary of Labor intends to call as trial witnesses. Defendants note that all of the employees on the list worked for Pacific Stucco as lathers. Originally, Plaintiff expressed intentions of filing suit on behalf of lathers and plasterers. However, Plaintiff informed the Magistrate Judge that Plaintiff was no longer pursuing

claims on behalf of plastering workers.  (*See* Mag. Order (#29) at 2.)  Principles of judicial

estoppel thus prevent Plaintiff from now pursuing claims on behalf of plasterers.  *See New*

*Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001).  At oral argument before this Court,

Plaintiff conceded this point.  Therefore, the Court grants Defendants' Motion (#49) in so far

as it requests the Court to dismiss all actions on behalf of field employees other than lathers.

### B.    Limitation of Claims to Employees Who Worked on Same Crews as Representative Witnesses

Defendants also argue that Plaintiff's claims must be limited to lathers who worked

on the same crews as the representative employees listed by Plaintiff.  The Secretary of Labor

may provide representative testimony to establish class-wide back wage relief.  *See, e.g.*,

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).  A determination of

whether the representative testimony adequately represents the class depends on the nature of

the work involved, the working conditions and relationships, and the detail and credibility of

the testimony.  *See McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988).  Plaintiff's

representative witnesses testified that they worked uncompensated overtime hours as lathing

employees for Pacific Stucco.  Defendants claim that Plaintiff's representative witnesses only

properly support claims on behalf of other lathers who worked on the same crews.  They

claim that representative testimony must be provided from each crew.

This Court must consider the nature of the work involved as well as the relevant

working conditions and relationships to determine whether Plaintiff's representative

witnesses adequately represent a class of all lathe workers at Pacific Stucco.  *Id.*  Every

Pacific Stucco lathing crew does the exact same work.  Their working conditions do not vary,

and they perform the same job duties on the various construction sites.  Testimony from at least five former lathing employees representing several crews reflects that they, along with the rest of their crews, worked overtime hours without additional compensation.  Those witnesses testified that their various crews started and ended work at the same time.  A former crew chief testified that he had knowledge of other lathing crews at other work sites putting in the same uncompensated overtime hours as his crew.  A superintendent testified that on the occasions that he visited a work site after hours, he found employees working overtime hours 40 percent of the time.  Furthermore, every crew filled out the same time sheets and received payment using the same piecework method.  Plaintiff claims that Defendant Jim Pope instituted a company policy of prohibiting employee time sheets from reflecting more than 40 hours worked per week, regardless of the actual time spent working.[1] This alleged FLSA violation applied to all of Pacific Stucco's lathing crews.

Defendants rely on unpersuasive authority to support their claim that Plaintiff's witnesses do not adequately represent the class of lathing employees at Pacific Stucco. Defendants principally rely on *Reich v. Gateway Press, Inc.*, 13 F.3d 685 (3d Cir. 1993), in which the appellate court remanded the case to the trial court for more information on newspaper reporter representative testimony because it was not clear whether the testifying witnesses were newspaper reporters, where they worked, or the number of hours they worked. In this case, all of Plaintiff's representative witnesses are lathers, and their crew assignments and stated hours of work are clear based on their testimony and Pacific Stucco's records. Defendants also rely on *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2d Cir. 2003), in

---

[1] For Plaintiff's support of this assertion, see Section III.B.

which representative witnesses were inadequate since there was insufficient evidence showing lack of overtime compensation because the court did not know how much the employer actually paid the employees, and *Secretary of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991), in which Plaintiff attempted to have one witness testify as the representative of 244 employees. Here, Pacific Stucco's records clearly show how much it paid to each lathing employee, and Plaintiff is not attempting to use a single employee as a class representative.

Based on the foregoing, Plaintiff has presented sufficient evidence at this stage of the litigation to demonstrate that its representative witnesses adequately represent all lathing employees at Pacific Stucco. At the summary judgment stage, Plaintiff has successfully refuted Defendants' assertion that at least one representative witness must come from each lathing crew. While the trier of fact might ultimately determine that Plaintiff's representative witnesses are not credible, such a determination is inappropriate at the summary judgment stage of proceedings. *See, e.g.*, *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

### C. Dismissal of Claims Concerning 16 Employees Who Provided Declarations

Defendants also argue that the Court should dismiss all claims on behalf of 16 Pacific Stucco employees who provided Defendants with declarations in which they allegedly stated that they were properly paid and Pacific Stucco did not owe them any overtime salary. However, Plaintiff presents evidence that demonstrates a genuine issue of material fact as to the validity of the assertions that Defendants urge the Court to adopt in the employee declarations. Several facts on record call into question the validity of the declarations. Defendants claim that each employee was admonished that Pacific Stucco would not retaliate

against them based on their statements regarding overtime hours and wages.  However, two of Plaintiff's employee-witnesses testified that their supervisors threatened to fire them if they complained regarding Pacific Stucco's timekeeping and payroll practices.  At least one other employee felt that he would likely lose his job if he complained.  Another witness testified that he was told that he would be fired if he approached the Pacific Stucco office to discuss his hours.  Witnesses also testified that Pacific Stucco's policy was to distribute documents regarding payment to the employees with their paychecks, and some Spanish-speaking employees testified that they had to sign documents in English in order to receive their paychecks on occasion.  Furthermore, the timing of the declarations is suspect. Although the Department of Labor investigated Pacific Stucco in 1999, and again in 2003, Pacific Stucco did not secure these declarations until it discovered the Secretary of Labor's intent to file a Complaint (#1) in this action.  These circumstances create a genuine issue of material fact as to whether the 16 declarations are trustworthy.  The trier of fact should have the opportunity to determine whether the employees who provided the declarations did so under pressure or duress, or whether they were truthful and thus do not qualify for back wages as part of the class.

### III.    **Claims against Jim Pope**

Defendants move the Court to dismiss all claims against Jim Pope because he does not qualify as an employer under the FLSA, and he had neither actual nor constructive knowledge of the violations alleged in Plaintiff's complaint.

### A.     Pope Qualifies as an Employer under the FLSA

Both the Supreme Court of the United States and the Ninth Circuit Court of Appeals have applied an expansive definition of "employer" under the FLSA. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1998). Whether an actor qualifies as an employer under the FLSA "does not depend on isolated factors but rather upon the circumstances of the whole activity." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1324 (9th Cir. 1991). Relevant factors include the authority to hire and fire employees, supervision and control of the conditions of employment, determination of rate and method of pay, and maintenance of employment records. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1991). Individuals who exercise economic and operational control over the employment relationship have also been considered employers under the FLSA. *See Lambert*, 180 F.3d at 1011.

Based on these factors, Jim Pope qualifies as an employer under the FLSA. As President and General Manager of Pacific Stucco, Pope has broad operational control over the company, including the company's piecework payment plan and overtime policy. He has run the company for approximately the last 10 years, and he spends six to seven hours a day in the Pacific Stucco office. Pope is also involved in the personnel practices and policies of Pacific Stucco. It is undisputed that he helped prepare the field worker Handbook and has the power to hire and fire employees. Pope served as Pacific Stucco's representative during both Department of Labor investigations. Nevertheless, Defendants assert that Pope does not qualify as an employer under the FLSA.

Defendants argue that Pope does not qualify as an employer under the FLSA because he is not directly responsible for the day-to-day operations on the construction sites. Specifically, Pope did not personally hire and does not directly supervise the employees whose wages are at issue in this case. These factors do not absolve Pope of individual liability under the FLSA. As noted above, the totality of the circumstances concerning Pope's involvement with Pacific Stucco determine liability under the FLSA, not isolated factors. *See Gilbreath*, 931 F.2d at 1324. Requiring Pope to have direct day-to-day control over the employees contradicts the accepted expansive definition of "employer" under the FLSA. It is well established that a corporate officer without direct daily supervisory responsibilities over employees can still qualify as an employer under the FLSA. *See, e.g., Herman v. RSR Security Services, Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). As President and General Manager, Pope had operational control over the piecework payment system and he was the ultimate authority on personnel decisions. Pope had authority to abandon the piecework system after the Department of Labor informed him that the system resulted in underpayment to field workers. Instead, Pope specifically decided to retain the piecework system. Accordingly, although Pope did not personally hand out paychecks to the lathe workers, he was responsible for Pacific Stucco's payment policies, which are directly at issue in this case.

Pope's general operational control over Pacific Stucco, his daily presence in the office, his development of personnel policies such the piecework payment system and hour requirements, his ability to hire and fire, and his personal representation of Pacific Stucco throughout the Department of Labor investigations demonstrate at least a triable issue of fact

as to Pope's personal liability as an employer under the FLSA.

**B.      Pope's Knowledge of Alleged Violations**

Defendants argue that even if Pope qualifies as an employer under the FLSA, he cannot be found liable in this case because he did not have actual or constructive knowledge of the alleged violations.  Defendants note that an employer under the FLSA is only liable if he had actual or constructive knowledge of the alleged violations.  *See, e.g., Forrester v. Roth's IGA Foodliner*, 646 F.2d 413, 414 (9th Cir. 1981).  Defendants claim that none of Pacific Stucco's lathe workers ever notified Pope that they were underpaid for their work.  Furthermore, Defendants argue that Pope did not have constructive knowledge of overtime hours worked or wage violations because Pacific Stucco's policy was that the employees had the ultimate responsibility of ensuring that their time sheets accurately reflected their hours worked.  Defendants contend that Pope trusted the time sheets because of this company policy, and any errors occurred because the employees willingly signed inaccurate time sheets.  Pope had no reason to suspect that the time sheets were inaccurate.  Accordingly, Defendants move the Court for summary judgment because Pope had neither actual nor constructive knowledge of the alleged FLSA violations in this case.

Plaintiff notes that Defendants have misstated the knowledge requirements under the FLSA.  While actual or constructive knowledge is required, Defendants fail to point out that an employer has constructive knowledge if he fails to make efforts to enforce company policies in such a way as to prevent FLSA violations.  Merely promulgating company policies without further enforcement is insufficient:

> In all such cases, it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule, and must make every effort to do so.

29 C.F.R. § 785.13. Because genuine issues of material fact exist as to whether Pope had knowledge of the FLSA violations in this case, summary judgment is inappropriate.

Following the 1999 investigation, the Department of Labor advised Pope that his payment system failed to compensate field workers for $80,000 in overtime wages. Nevertheless, there is no evidence that Pope thereafter visited construction sites to ensure that the field workers did not continue to work overtime. However, the record shows that when one superintendent occasionally visited the construction sites after hours, he found that field employees were working overtime hours 40 percent of the time. Nevertheless, Pope continued to accept the 40-hour time sheets as accurate. Plaintiff argues that Pope instituted a policy that the time sheets could never reflect more than 40 hours worked per week, and he purposely did not inquire as to whether field employees were in fact working longer hours. The record demonstrates that Pope disciplined a crew chief because he listed more than 40 hours per week on a time sheet. Evidence on record demonstrates that crew chiefs routinely filled out the time sheets on behalf of the field workers, and one crew chief testified that an office worker told him the exact starting and ending times to put on the time sheets. Furthermore, several employees testified that they were working approximately 60-hour weeks for six years. Deposition testimony revealed that supervisors admitted that they did not keep accurate hours on their employees' behalf, and foremen were not permitted to turn in time sheets reflecting more than 40 hours worked per week.

The foregoing evidence on record raises a genuine issue of material fact as to whether Pope knew, or should have known through reasonable efforts, that field employees were working unpaid overtime hours.  Therefore, summary judgment is inappropriate regarding Pope's liability.

**CONCLUSION**

Therefore, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (#49) is *granted in part* and *denied in part*.  Defendants' Motion (#49) is granted in so far as it requests the Court to dismiss all claims on behalf of field employees other than lathers.  Defendants' Motion (#49) is denied on all other grounds.

DATED: August 11, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

Page 13 of  13